JOSEPH CARCHIDI & another *vs.* SATENIK KALAYJIAN.

Plymouth.   March 15, 1927. — May 23, 1927.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Jurisdiction*, Rescission.   *Fraud.   Damages*, In tort.

In a suit in equity to set aside, by reason of fraudulent misrepresentations by the defendant, a sale of a building by the defendant to the plaintiff, the fraud on the part of the defendant was established.   It further appeared that the building was on land held by the defendant under a lease which was to expire in 1930 and that, during negotiations preceding an agreement for the sale, the plaintiff informed the defendant that he would not be interested unless the owner would extend the lease. By reason thereof, the lease of the land to the defendant was cancelled and a new lease, expiring in 1940 and at a higher rent, was given to the plaintiff.   The agreement contained no reference to the fact that the building stood on leased land.   There was no offer by the plaintiff to assign the lease to the defendant nor a finding that such an assignment could be made.   A final decree awarded damages but did not order rescission.   *Held*, that, it not appearing that the plaintiff was able to make complete restoration of the premises so that the rights of the defendant as they existed when the agreement was made could be preserved, rescission properly was not granted.

An award of damages in the suit above described on the basis, that the value of the building when sold under the agreement and its value as represented depended upon the difference between the amount of net income as represented and the amount of net income actually received by the defendant while in occupation under his lease, was proper.

BILL IN EQUITY, filed in the Superior Court on May 8, 1925, for rescission of the transaction described in the opinion.

The suit was referred to a master and afterwards was heard by *Dillon*, J.   Material facts are stated in the opinion. By order of the judge, a final decree was entered directing the defendant to pay to the plaintiff $410, "being the amount of damage suffered by the plaintiffs because of the defendant's misrepresentations."

*R. W. Higgins*, for the plaintiffs.

*E. J. Campbell*, for the defendant.

BRALEY, J.   The plaintiffs on January 8, 1925, purchased of the defendant a building standing on land of which she

held a lease expiring in April, 1930. The purchase price was $3,200. It was provided in the written contract of sale that the plaintiffs were to pay $10 as a binder and to pay in cash on or before April 7, 1925, $1,190, while the balance in the sum of $2,000 "shall be paid by the buyers, giving a purchase price mortgage" which was made payable in instalments with the option of anticipating the payments, and also of paying any part of the principal or the whole, at any time before maturity. The plaintiffs made the cash payments and received from the defendant a bill of sale of the building and executed and delivered a mortgage thereon as security for their promissory note. During the negotiations prior to the agreement, the master finds, the plaintiffs informed the defendant that they would not be interested in the purchase unless one Rice, the owner of the land, would extend the term of the defendant's lease. A new lease at an increased rent was thereupon given by Rice to the plaintiffs expiring in 1940. The agreement, which contained no reference to the fact that the building stood on leased land, was to be performed on or before April 1, 1925, and the bill of sale, the mortgage, and the new lease were dated March 31, 1925. The bill alleges, and the master finds, that the defendant before the agreement was consummated, acting by her duly authorized agent, represented to the plaintiffs, "that the yearly income of said building" was $1,392 and that "the yearly expenses of said building were" $744.97. It was further found that the representations were false, and that the plaintiffs in reliance thereon were induced to purchase. But, having entered into possession April 1, 1925, they discovered the deceit, and demanded "about the last of April," 1925, repayment of the money and that the note and mortgage be cancelled, because the rent was not as represented to them. The demand was refused, and May 1, 1925, the plaintiffs advertised in a local newspaper that the building was for sale, and on May 8, 1925, brought the present suit for rescission, a return of the money, and for the cancellation of the note and mortgage, with a prayer for general relief.

The master's report having been confirmed, and no excep-

tions having been taken by the plaintiffs who are the appellants, the questions raised, are, whether specific relief should be decreed, or whether the plaintiffs are entitled only to money damages, and if so, whether the amount assessed by the master, to whom the report was recommitted, should be increased.

The plaintiffs voluntarily and for their own advantage secured a lease of the land for a longer term and at an increased rental than in the lease under which the defendant was in occupation when the agreement was made. But, when the bill was filed, the plaintiffs held the title to the building and occupied under a new lease running to themselves, while the old lease running to the defendant had been cancelled. The plaintiffs manifestly cannot compel the defendant to accept the new lease with the longer term and larger rent. If the agreement is set aside, the result is that the defendant owns the building while the plaintiffs own the leasehold. The agreement must be rescinded as a whole, and there is no evidence of the provisions of the new lease other than the terms of the demise and the rate of rent. *Perley* v. *Balch*, 23 Pick. 283, 286. It does not appear whether the plaintiffs could make an assignment of the lease without the lessor's consent, and the bill does not allege that the plaintiffs are ready to make, execute and deliver an assignment to the defendant, nor was an assignment tendered at the trial. See *Perley* v. *Balch, supra.* The plaintiffs have failed to show that upon discovery of the fraud they were able to make complete restoration of the premises so that the rights of the defendant as they existed when the agreement was made could be preserved. The presiding judge held rightly that rescission should not be granted. *Thurston* v. *Blanchard*, 22 Pick. 18. *Snow* v. *Alley*, 144 Mass. 546. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 477, 478. The cases of *Smith* v. *Hale*, 158 Mass. 178, *O'Shea* v. *Vaughn*, 201 Mass. 412, and *Wellington* v. *Rugg*, 243 Mass. 30, cited by the plaintiffs where exceptions to the general rule just stated were recognized, are distinguishable on their facts from the case at bar.

The master found that the damages caused to the plain-

tiffs by reason of the misrepresentations concerning rent, income, sewer and water expenditures was $410, to be assessed with reference to the lease of the defendant which would expire in 1930. It is contended by the defendant under exceptions to the supplemental report, that the master "failed to consider or find the difference between what the building was actually worth and what it would have been worth if it were as represented." But the value of the building when sold under the agreement and its value as represented, depended upon the difference between the amount of net income as represented, and the amount of net income actually received by the defendant while in occupation under her lease. *Stiles* v. *White,* 11 Met. 356.

The interlocutory decree overruling the exceptions and confirming the report is affirmed, and the final decree is also affirmed with costs.

*Ordered accordingly.*